**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 1:19-cr-10198-DPW |
| | ) | |
| SEBASTIAN BATISTA, | ) | |
| | ) | |
| Defendant. | ) | |

**OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

The United States, by and through Assistant United States Attorney Stephen W. Hassink, respectfully submits this response in opposition to Defendant Sebastian Batista's Motion to Suppress Evidence.

On the night of February 28, 2019, after arresting the target of a federal investigation for fentanyl trafficking, that target agreed to cooperate with investigators and call his fentanyl source of supply to arrange a drug transaction.  The target had several recorded phone conversations with the defendant in the presence of investigators, in which he arranged to purchase 200 grams of fentanyl from the defendant.  Agents then deployed to the meeting site to set up surveillance. The target remained in a vehicle with investigators a short distance from the site.  At around the agreed-upon time, investigators observed a Jeep Cherokee, later determined to be driven by the defendant, approach the meeting site.  On a monitored call, the defendant claimed he was being followed and abruptly hung up.  The Jeep Cherokee then sped up toward the main road.  Agents stopped the Cherokee, had the defendant step outside the vehicle, and the target identified the defendant as his source of supply.  Agents searched his vehicle, in which they found 200 grams of fentanyl in a compartment underneath the driver's seat.

Because this vehicle stop was supported by reasonable suspicion and the vehicle search was supported by probable cause and incident to the defendant's arrest, the agents' actions were reasonable and lawful, and the search did not violate the Fourth Amendment.  The defendant's motion should be denied.

**FACTS**

On the night of February 28, 2019, investigators arrested the target of a drug investigation in his residence in Waltham, Massachusetts.  Prior to his arrest, the target and his partner had sold over 150 grams of fentanyl to undercover law enforcement agents.  The target (hereinafter, the cooperating witness or "CW") agreed to cooperate with investigators and identify his drug source of supply.  Under the direction and supervision of investigators, the CW had several recorded phone conversations with the defendant.  In those conversations, in lightly coded language, the defendant agreed to provide 200 grams of fentanyl to the CW.  The two arranged to meet at their usual meeting spot, a low-traffic residential street near the CW's residence in Waltham.

Investigators placed surveillance around the meeting location and drove the CW's white van to the location because the defendant was familiar with the van and would expect to see it at the meeting.  The CW, with his phone, waited in a vehicle with investigators near the meeting location.  While waiting for the defendant to arrive, investigators observed a Jeep Cherokee drive down the road past the CW's van.  At that point, the CW received a phone call from the defendant in which the defendant told the CW that he was on the street and that the CW should keep his van where it was.  After observing the Jeep Cherokee make a U-turn, the defendant called the CW's phone again and asked why he was being followed before he abruptly hung up. These calls were monitored by investigators, but not recorded due to their short duration.  After

the defendant hung up on the CW, investigators observed the Jeep Cherokee speed up and head towards the main road.  On its way out to the main road, investigators intercepted and stopped the Jeep Cherokee.

While investigators had the defendant step out of the vehicle and performed a safety sweep of the vehicle's interior, other agents drove the CW slowly past the defendant, where he made an unsolicited identification of the defendant as his drug supplier.  Investigators then searched the Jeep Cherokee and located 200 grams of fentanyl underneath the driver's seat. Investigators also seized a cell phone on the defendant's person and confirmed it was the same cell phone used to arrange the drug deal.

## ARGUMENT

### I.    Investigators had reasonable suspicion to stop the defendant's vehicle.

"An investigatory stop, commonly known as a *Terry* stop, 'requires only articulable facts giving rise to a reasonable suspicion that a suspect may be involved in criminal activity.'" *Eldredge v. Town of Falmouth*, 662 F.3d 100, 106 (1st Cir. 2011).  The standard is objective, but the circumstances "are to be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States v. Ivery*, 427 F.3d 69, 73 (1st Cir. 2005) (quoting *United States v. Trullo*, 809 F.2d 108, 112 (1st Cir. 1987)).  The inquiry is based on the totality of the circumstances, and not on a dissection of single facts in isolation. *United States v. Soares*, 521 F.3d 117, 120 (1st Cir. 2008).  This focus is critical because, as the First Circuit noted, "in conducting a reasonable suspicion analysis, 'a fact that is innocuous in itself may in combination with other innocuous facts take on added significance . . . culminat[ing] in reasonable suspicion." *United States v. Wright*, 582 F.3d 199, 212 (1st Cir. 2009); *see also United States v. Ramdihall*, 859 F.3d 80, 86 n.4 (1st Cir. 2017).  The law is clear

that "a *Terry* stop is permitted even if the conduct justifying the stop was ambiguous and susceptible of an innocent explanation." *Wright*, 852 F.3d at 213.

The First Circuit has upheld *Terry* stops where the "innocuous" facts of timing, location, and unusual behavior culminate in reasonable suspicion. *See, e.g.*, *United States v. Stanley*, 915 F.2d 54, 56 (1st Cir. 1990) (finding time of night, high-crime location, and unusual conduct established reasonable suspicion); *Trullo*, 809 F.2d at 112 (finding high-crime area and unusual behavior justified officers' reasonable suspicion).

Here, the CW was arrested after selling over 150 grams of fentanyl to undercover agents. Agents had monitored phone calls in which the CW set up a drug deal to purchase 200 grams of fentanyl from his supplier, the defendant. At the meeting location, at the appointed time, agents observed a Jeep Cherokee drive by the CW's van. At that time, the defendant called the CW and told him to keep his vehicle where it was because the defendant was on the street. Agents observed the Cherokee drive past the CW's van and make a U-turn a short time later. The Cherokee then drove back in the direction of the CW's vehicle. At that time, the defendant made a second call to the CW in which he asked why he was being followed and abruptly hung up. The Jeep Cherokee then sped up in the direction of the main road and agents stopped the vehicle. Based on the phone calls arranging a drug transaction, the low-traffic residential street at night time, the unusual and erratic driving of the Cherokee synchronized with the additional calls to the CW, agents on scene had reasonable suspicion sufficient to conduct a *Terry* stop of the vehicle and question the defendant.

## II.     Investigators had probable cause to search the vehicle under the automobile exception to the warrant requirement.

"The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures in the absence of a warrant supported by probable cause." *United States v. White*, 804

F.3d 132, 136 (1st Cir. 2015).  However, under the automobile exception, "police officers may

seize and search an automobile prior to obtaining a warrant where they have probable cause to

believe that the automobile contains contraband." *Id.* (quoting *United States v. Silva*, 742 F.3d 1,

7 (1st Cir. 2014)).  Under the automobile exception, "the only essential predicate" for a valid

warrantless search of a motor vehicle is probable cause to believe that the vehicle contains

contraband or other evidence of criminal activity.  *United States v. McCoy*, 977 F.2d 706, 710

(1st Cir. 1992); *see also United States v. Martinez-Molina*, 64 F.3d 719, 726 n.5 (1st Cir. 1995)

(search of vehicle based on probable cause of contraband was justified under the automobile

exception even if defendant's arrest was unlawful).  "Probable cause exists when the facts and

circumstances as to which police have reasonably trustworthy information are sufficient to

warrant a person of reasonable caution in the belief that evidence of a crime will be found."

*White*, 804 F.3d at 136 (internal quotation marks omitted).

The automobile exception applies even when the mobility of the vehicle is restrained and

the driver is in custody.  *See id.* at 135–37 (holding a warrantless search of an automobile valid

under the automobile exception even when defendant was in custody and vehicle was pulled

over).  Additionally, under this exception, "if there is probable cause to believe a vehicle

contains evidence of criminal activity, agents can search without a warrant any area of the

vehicle in which the evidence may be found," including the trunk, glove compartment, and

closed containers.  *See United States v. Polanco*, 634 F.3d 39, 42 (1st Cir. 2011) (internal

quotation marks and brackets omitted); *see also California v. Acevedo*, 500 U.S. 565, 572

(1991).  Finally, an "impressive convoy of auto-exception cases holds that if the requisite

probable cause exists it matters not whether the vehicle was already parked, whether it was

searched at another locale, or even whether agents had time to obtain a warrant first." *Polanco*,

634 F.3d at 43 (internal citations omitted).

Since probable cause is determined by reviewing all the facts and circumstances surrounding a search, all of the events leading up to the stop of the defendant's vehicle add to the probable cause agents had to search the vehicle under the automobile exception to the warrant requirement.  As in *White*, the officers had probable cause to believe the defendant's car contained contraband based upon the CW's phone calls with the defendant arranging a meeting place for the narcotics transaction.  Based on the prearranged location and time for the drug deal, the phone calls between the CW and the defendant upon the arrival of the Cherokee to the location, and the Cherokee's rapid departure synchronized with the defendant's discovery of police surveillance, the officers had probable cause to believe that the defendant had narcotics in his vehicle.  Further, prior to the search, the CW, without prompting, identified the driver, the defendant, as his supplier.  Based on these facts, investigators had sufficient probable cause to search the vehicle and its compartments and did not need to obtain a warrant.

III.     **The search was a lawful search incident to the defendant's arrest.**

A warrant is not required to perform a search incident to a lawful arrest.  "The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations."  *Arizona v. Gant*, 556 U.S. 332, 338 (2009).  Additionally, "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."  *Id.* at 343 (internal quotation marks omitted).  Authorization to search a vehicle's passenger compartment also extends to any containers found therein.  *See United States v. Mensah*, 737 F.3d 789, 794 (1st Cir. 2013) (affirming the denial of a motion to suppress evidence found in "the unlocked

glove compartment during a search of [the defendant's] car that took place after [the defendant] was handcuffed and placed in a police cruiser").

After the CW identified the defendant as his source of supply, agents arrested him based on probable cause that he had committed a crime involving drug trafficking. Prior to the vehicle being searched, the defendant was removed and put in custody in a law enforcement cruiser. Although officer safety was not at issue, given the circumstances of the arranged meeting—the sale of narcotics—agents had a reasonable belief that they would find evidence relevant to the crimes leading to arrest—drug trafficking—in the passenger compartment of the vehicle, and any compartment or container therein where narcotics could be concealed. Pursuant to that reasonable belief, agents conducted a search incident to arrest of the vehicle's passenger compartment and all containers therein. *See Polanco*, 634 F.3d at 42–43 ("[T]he auto exception requires probable cause. But the *Gant* evidentiary justification only requires a 'reasonable basis.'") (internal citation omitted). Therefore, "the likelihood of discovering offense-related evidence authorized the search in this case," and the defendant's motion to suppress should be denied. *Gant*, 556 U.S. at 344; *see also Mensah*, 737 F.3d at 795.

**IV.     The drugs are also admissible under the inevitable discovery rule.**

"Evidence which comes to light by unlawful means nonetheless can be used at trial if it ineluctably would have been revealed in some other (lawful) way, so long as (i) the lawful means of its discovery are independent and would necessarily have been employed, (ii) discovery by that means is in fact inevitable, and (iii) application of the doctrine in a particular case will not sully the prophylaxis of the Fourth Amendment." *United States v. Zapata*, 18 F.3d 971, 978 (1st Cir. 1994) (internal citations omitted). "Courts have regularly approved inventory searches of impounded motor vehicles despite the absence of probable cause, and, by like token, courts often

have held that evidence which would have turned up during an inventory search comes under the umbrella of the inevitable discovery rule." *Id.* (internal citations omitted); *see also United States v. Staula*, 80 F.3d 596, 603 (1st Cir. 1996) ("[W]hen a driver is lawfully arrested and thus disabled from continuing his journey, the Constitution permits the police to carry out a routine inventory examination incident to impounding the vehicle.").

The defendant's vehicle was stopped on the side of the road, and he was arrested without any other licensed driver present to take charge of the vehicle.  Under these circumstances, it is standard policy to have the car towed and impounded.  Prior to towing, agents and officers would have taken an inventory of the vehicle pursuant to agency policy and under the community caretaking exception to the warrant requirement.  During that inventory, they would have discovered the drugs under the front passenger seat of the defendant's vehicle.  Therefore, under the inevitable discovery rule, the drugs are admissible at trial and the defendant's motion to should be denied.

## V.      The defendant is not entitled to an evidentiary hearing.

The defendant has failed to show that material facts are in doubt or dispute, and therefore, an evidentiary hearing is unnecessary.  "A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record." *Straula*, 80 F.3d at 603.  Moreover, "a criminal defendant has no absolute or presumptive right to insist that the district court take testimony on every motion," *United States v. Panitz*, 907 F.2d 1267, 1273 (1st Cir. 1990), and "evidentiary hearings on motions are the exception, not the rule," *United States v. Rowe*, 202 F.3d 37, 41 (1st Cir. 2000) (quoting *United States v. McGill,* 11 F.3d 223, 225 (1st Cir. 1993)).  At a minimum, the defendant must allege facts that are "sufficiently definite, specific, detailed, and

nonconjectural, to enable the court to conclude that a substantial claim is presented." *United States v. Lewis*, 40 F.3d 1325, 1331 (1st Cir. 1994).  "Most importantly, the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief." *United States v. Cintron*, 724 F.3d 32, 36 (1st Cir. 2013).

Here, the defendant has failed to meet his threshold burden.  The only facts the defendant alleges in his affidavit related to the search are that he did not consent to the search of his vehicle and that the officers did not show him a warrant.  These facts are not in dispute and he has not alleged any additional facts contesting the account described in this opposition.  Where all of the defendant's arguments in his motion can be addressed by the Court as a matter of law, an evidentiary hearing is not necessary.  *See United States v. Jimenez*, 419 F.3d 34, 43 (1st Cir. 2005) ("A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record.").  Consequently, this Court should deny the Defendant's Motion to Suppress Evidence on the papers or upon oral argument of the parties without an evidentiary hearing.


November 19, 2019

                                    Respectfully submitted,

                                    ANDREW E. LELLING
                                    United States Attorney


                            By:    /s/ *Stephen W. Hassink*
                                    STEPHEN W. HASSINK
                                    Assistant United States Attorney

## CERTIFICATE OF SERVICE

I, Stephen W. Hassink, Assistant U.S. Attorney, do hereby certify that on November 19,

2019, I served a copy of the foregoing on all registered parties by electronic filing on ECF.

*/s/ Stephen W. Hassink*
Stephen W. Hassink
Assistant U.S. Attorney
